IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**       :

    **Plaintiff,**

    **v.**                                                    :

**MOBILEACTIVE CORP.**                     **Civil Action No.: _____**
3708 Yuma Street, NW
Washington, DC 20016

                                                              :

    **Defendant.**

...oOo...

# COMPLAINT

This is an action brought by the United States of America, by and through its undersigned counsel, to recover damages and civil penalties under the False Claims Act against MobileActive Corp. for knowingly submitting or causing to be submitted numerous false claims, statements, and records in connection with an application for, and its subsequent misuse of, federal grant funds.

## PARTIES

1.    Plaintiff is the United States of America (the "United States" or "Plaintiff"), bringing this action on behalf of its agency, the United States Department of State (the "State Department" or the "Department"), a cabinet-level agency within the executive branch of the United States government.

2.    Defendant MobileActive Corp., a Maryland corporation, is the successor-in-interest to MobileActive Corp. (collectively "MobileActive" or "Defendant"), a Delaware not-for-profit corporation which maintained offices in New York, New York and also operated out of Maryland, Massachusetts, and Washington, D.C.

3. At all times relevant, Katrin Verclas ("Verclas"), as chief operator of the Defendant, had exclusive direction, control, and authority to operate MobileActive and undertook the actions alleged herein on behalf of MobileActive.

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). This Court has jurisdiction in this case pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

5. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) & (c) because as a substantial portion of the prohibited acts complained of herein took place in this district, and because, at all times material and relevant hereto, Defendant has transacted business in this district.

## LEGAL FRAMEWORK

6. The FCA—a federal civil statute—imposes liability for treble the government's damages and civil penalties on any person who knowingly presents, or causes to be presented to the United States a false claim for payment or approval, *see* 31 U.S.C. § 3729(a)(1), as well as any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government, *see* 31 U.S.C. § 3729(a)(2).[1]

7. In order to properly state a claim under the FCA, a plaintiff must allege "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money

---

[1] Liability under the FCA is not limited to merely persons, but can and often does include corporations or other entities. *See e.g., U.S. ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20 (D.D.C. 2010) (noting that corporations are persons subject to liability under the FCA).

due." *United States v. Kernan Hosp.*, 880 F. Supp. 2d 676, 685 (D. Md. 2012) (quoting *U.S. ex rel. Harrison v. Westinghouse Savannah River Co.,* 352 F.3d 908, 913 (4th Cir.2003)).

8. The definition of "knowingly" includes acting in "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. *Id.* § 3729(b). Additionally, the United States may seek up to $11,000 for each false claim submitted on or after September 29, 1999. *Id.* § 3729(a); 28 C.F.R. § 85.3(a)(9). Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), the FCA civil penalties were adjusted to not less than $11,665 and not more than $23,331.

### FACTS COMMON TO ALL COUNTS

9. For fiscal years 2009 and 2010, Congress appropriated money to the State Department's Bureau of Democracy, Human Rights, and Labor (the "DRL"), under the category Democracy Fund/Human Rights and Democracy Fund/Global Internet Freedom Funds. The DRL, in coordination with the Bureau of Administration, Logistics Management, Office of Acquisitions Management ("AQM"), International Programs, was authorized to obligate this money by making grants.

10. On or about December 17, 2009, the DRL publicized a Request for Proposal ("RFP"), which solicited grant proposals under the descriptive title of "Promoting Freedom of Expression and the Free Flow of Information through Technology and Access." The submission deadline for that RFP was on or about January 22, 2010.

11. On or about January 15, 2010, while preparing a response to the RFP, Verclas converted a project known as MobileActive into a Delaware corporation.

12. On or about January 22, 2010, MobileActive, electronically submitted a responsive grant proposal (the "Proposal"). In submitting that Proposal, MobileActive certified to the truth and

accuracy of the information contained therein and acknowledged the potential for civil and civil and criminal penalties if false statements were made.

13.     In the Proposal, MobileActive made certain false statements, including but not limited to the following: (1) that MobileActive was a § 50l(c)(3) non-profit organization; (2) that MobileActive had the legal authority to apply for a grant under the RFP; and (3) that MobileActive had the financial capability to ensure proper planning, management, and completion of the proposed project, including funds sufficient to pay the required non-Federal share of project cost.

14.     On or about September 20, 2010, based on the false information in the Proposal, the State Department awarded S-LMAQM-10-GR-613 ("Grant 613") to MobileActive in the amount of approximately $1,411,000.00. The State Department's share of Grant 613 was $1,231,000, and MobileActive's share was $180,000.00. The false information provided was material to the State Department's decision to award Grant 613.

15.     In order to be compliant with Grant 613, MobileActive was required to meet certain objectives, including, among other things, (i) developing and promoting a Mobile Security Toolkit of needed and missing software applications for secure mobile communication, and (ii) developing and promoting tactical resources that would allow human rights organizations and activists in specific geographic areas to easily assess and mitigate risks associated with their mobile communications.

16.     The performance period of Grant 613 began on or around September 20, 2010, and ended on or around September 30, 2012.

17.     On or about September 22, 2010, MobileActive falsely certified to the State Department through Form DS-1909, "Federal Assistance Award," that MobileActive would perform work as agreed under Grant 613, and that MobileActive would adhere to certain terms, conditions, and regulations. These statements were material to the State Department's decision to disburse funds pursuant to Grant 613.

18. On or about September 30, 2011, MobileActive sought an extension of time to complete work under Grant 613. At the time of the extension request, MobileActive had drawn only approximately $560,000 of the $1,231,000 available from the State Department. Based on MobileActive's representations the State Department approved the extension as an amendment to Grant 613. Thereafter, MobileActive had until the end of September 2012 to perform its obligations under Grant 613.

19. In order to request and receive Grant 613 funds, MobileActive established an electronic account with Payment Management System ("PMS"), a federal government grants management database, located in Bethesda, Maryland.

20. In setting up this account, MobileActive provided PMS with information necessary to make payments to MobileActive's business economy checking account with Bank of America (the "MobileActive BOA account").

21. From approximately October 26, 2010 through July 26, 2012, MobileActive submitted 11 payment requests to the State Department, causing the Department, and in turn PMS, to release $1,222,000 of Grant 613 funds to MobileActive.

22. MobileActive failed to comply with a number of requirements and conditions set forth in Grant 613 along with the related rules and regulations governing federal awards, including participation in an audit.

23. Beginning in November 2012, the State Department began performing an audit and quality assurance inspection with regard to Grant 613. The State Department, through a DRL grants officer, requested several times that MobileActive provide documents and information necessary to close out Grant 613, including a final financial report, a final progress report, inventory report, and other documents and items. Many of these reports were required to be submitted through PMS, located in Bethesda, Maryland.

24. In March 2013, the State Department, through an AQM grants officer, reinforced to MobileActive several times the importance of complying with closeout requirements, which serve as the primary means for the State Department to conduct an audit of Grant 613. The AQM grants officer further warned MobileActive that failure to comply with such requirements could result in a debarment action against MobileActive and its director.

25. By letter correspondence sent on or around August 9, 2013, the State Department advised MobileActive that, among other things, the State Department had not received a final program report and a final financial report. The letter directed MobileActive to produce all components, including technical software, developed under Grant 613 to the State Department. The letter also directed MobileActive to comply with all areas of prior non-compliance by close of business on August 16, 2013.

26. On or about September 3, 2013, the State Department hand-delivered to MobileActive another formal non-compliance letter repeating the same directives as the prior, August 9, 2013 letter. This letter directed compliance by the close of business on September 13, 2013. Both AQM grants officers were acting on a full-time or part-time basis to perform an audit or a quality assurance inspection for and on behalf of the United States.

27. MobileActive knowingly failed to perform work pursuant to Grant 613 in a number of ways, including but not limited to:

   a. MobileActive discontinued the services of Company A, a software developer to which Grant 613 specifically allocated $410,000. Though MobileActive only paid Company A approximately $91,887.74 of the $410,000 allocation, MobileActive nonetheless requested and obtained the full allocation of funds.

      b. MobileActive did not contract for services with Company B, a software developer to which Grant 613 specifically allocated $200,000. Though Company B was paid no money, MobileActive requested and obtained the full allocation of funds.

28. MobileActive filed false and misleading quarterly financial and progress reports with the State Department, which led the State Department to believe incorrectly that MobileActive appropriately expended Grant 613 funds.

29. MobileActive failed to obtain and submit the A-133 audit required by the terms of Grant 613.

### COUNT ONE

**Presenting False or Fraudulent Claims, Against MobileActive,
In Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)**

30. The United States incorporates and re-alleges the previous paragraphs as if fully stated herein.

31. In violation of the False Claims Act, 31 U.S.C. § 3729(a)(1), Defendant MobileActive knowingly presented or caused to be presented claims for payment to the United States by, among other things:

      a. submitting its Proposal, which Defendant MobileActive knew contained numerous false and fraudulent claims concerning its status as a non-profit organization; legal authority to apply for a grant under the RFP; and financial capability to ensure proper planning, management, and completion of the proposed project, including funds sufficient to pay the required non-Federal share of project cost; and

      b. failing to perform the work and obligations set forth under the terms of Grant 613, and causing the State Department to submit/release to MobileActive no less

than $1,222,000.00 in federal grant money, which was not fully or properly spent or used with the companies and services MobileActive had indicated in its application for Grant 613.

32. The claims presented were false and fraudulent, and Defendant MobileActive presented or caused to be presented these claims with actual knowledge of their falsity, or in deliberate ignorance or reckless disregard of their falsity. This intent was evidenced by, among other things, the submitted fraudulent documentation concerning the status of MobileActive, the use and movement of federal grant money for purposes that were directly at odds with the terms of Grant 613, and the repeated efforts to avoid compliance with and to impede the work of State Department officials seeking to conduct an audit of MobileActive's use of federal grant funds.

33. As a result of these false or fraudulent claims submitted or caused to be submitted by Defendants, the United States, through the State Department, paid or caused to be paid out federal grant moneys, resulting damages to the United States in an exact amount to be determined at trial.

## COUNT TWO

**Knowingly Presenting a False and Fraudulent Record, Against MobileActive, In Violation of the False Claims Act, 31 U.S.C. § 3729(a)(2)**

34. The United States incorporates and re-alleges the previous paragraphs as if fully stated herein.

35. In violation of the False Claims Act, 31 U.S.C. § 3729(a)(2), for purposes of obtaining or aiding to obtain federal grant money, Defendant MobileActive made or presented or caused to be made or presented to the United States false or fraudulent records, including at least 11 payment requests that caused the State Department, and in turn PMS, to release Grant 613 funds to MobileActive. Defendant MobileActive knowingly submitted these false or fraudulent records, among others.

36. As a result of these false or fraudulent claims and records submitted or caused to be submitted by Defendants, the United States, through the State Department, paid or caused to be paid out federal grant moneys, resulting in damages to the United States.

**Wherefore**, Plaintiff, the United States of America, demands that judgment be entered in its favor and against Defendant MobileActive for actual damages and treble damages, to be established at trial, plus a penalty of $12,000 per false claim; that Defendant MobileActive be assessed pre-judgment interest from the date of the first false or fraudulent claim; and that the United States be awarded such other and further relief as the nature of the case may require.

Respectfully submitted,

**Robert K. Hur
United States Attorney**

*/s/ Patrick Selwood*
Patrick G. Selwood, Bar No. 19999
Roann Nichols, Bar No. 07871
Assistant United States Attorneys
United States Attorney's Office,
 District of Maryland
36 South Charles Street, Fourth Floor
Baltimore, Maryland, 21201
Tel: (410) 209-4892
Fax: (410) 962-2310
E-mail: Patrick.Selwood@usdoj.gov
          Roann.Nichols@usdoj.gov

*Attorneys for the United States of America*